KENNETH LEHMAN and
SHEILA JOHNSON,

      Plaintiffs,

v.

                                    Case No. 2:08-cv-530

                                      Honorable Patrick J. Duggan[*]

LEE COUNTY SHERIFF MIKE SCOTT,
LEE COUNTY DEPUTY BRIAN PREZPOLEWSKI,
LEE COUNTY DEPUTY GUILLERMO QUINTANA,
LEE COUNTY DEPUTY JAMES RICHARD,
LEE COUNTY DEPUTY LORRIE REAVES, and
THOMAS BULLOCH,

      Defendants.

_____/

## OPINION AND ORDER

On July 3, 2008, Plaintiffs Kenneth Lehman and Sheila Johnson initiated this pro se action against Defendants alleging violations of their civil rights and various state laws. Plaintiffs are suing Lee County Sheriff Mike Scott ("Sheriff Scott") in his individual and official capacities and Lee County Deputies Brian Prezpolewski, Guillermo Quintana, James Richard, and Lorries Reaves (collectively "Deputy Defendants"), in their individual capacities. Defendant Thomas Bulloch is a private citizen. In an Amended Complaint filed July 18, 2008, Plaintiffs set forth the following claims:

    (I)    42 U.S.C. § 1983 against Sheriff Scott, alleging a failure to train and supervise the Deputy Defendants resulting in violations of Lehman's and Johnson's rights under the Fourth and Fourteenth Amendments;

_____

[*]United States District Court Judge for the Eastern District of Michigan sitting by assignment.

(II)    42 U.S.C. § 1983 against Deputy Brian Prezpolewski, alleging unlawful searches and seizures in violation of Lehman's and Johnson's rights under the Fourth and Fourteenth Amendments;

(III)    42 U.S.C. § 1983 against Deputy Guillermo Quintana alleging unlawful searches and seizures in violation of Lehman's and Johnson's rights under the Fourth and Fourteenth Amendments;

(IV)    42 U.S.C. § 1983 against Deputy Lorrie Reaves alleging an unlawful search in violation of Johnson's and Lehman's rights under the Fourth and Fourteenth Amendments;

(V)    42 U.S.C. § 1983 against Deputy James Richard alleging unlawful detention of Lehman in violation of his rights under the Fourth and Fourteenth Amendments;

(VI)    42 U.S.C. § 1983 against Thomas Bulloch alleging an unlawful search and seizure of Lehman in violation of his rights under the Fourth and Fourteenth Amendments;

(VII)    42 U.S.C. § 1983 against Deputy Prezpolewski and Bulloch alleging retaliation in violation of Lehman's First Amendment rights;

(VIII)    Malicious prosecution of Lehman in violation of Florida law against Deputy Prezpolewski and Bulloch;

(IX)    Negligence and/or reckless conduct under Florida law brought on behalf of Lehman and Johnson against Bulloch and Deputies Prezpolewski, Quintana, Reaves, and Richard; and,

(X)    Assault and battery under Florida law brought on behalf of Lehman against Deputy Prezpolewski.

In an opinion and order entered May 4, 2009, this Court dismissed with prejudice Plaintiffs' claims against Bulloch and dismissed him from this lawsuit.

Presently before the Court are three motions for summary judgment which the parties filed on April 3, 2009: (1) the Deputy Defendants' motion (Doc. 60), (2) Sheriff Scott's motion (Doc. 61), and (3) Plaintiffs' motion (Doc. 75). The motions have been fully briefed.

## I.    Standard for Summary Judgment

The parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*,

477 U.S. at 252, 106 S. Ct. at 2512.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II.    Facts

On the morning of June 5, 2006, as he was preparing to leave for work, Bulloch was confronted on his driveway by his neighbor, Lehman.  Lehman, using various profanities, accused Bulloch of harassing him with children in the neighborhood and threatened to post Bulloch's address and license plate numbers on the Internet. Lehman's live-in girlfriend, Johnson, accompanied him and was videotaping the incident.  After the confrontation, which lasted one to two minutes, Johnson and Lehman walked back across the street.  Johnson then went inside Plaintiffs' residence and Lehman entered his truck and drove to the store.

The previous day, Lehman had followed the car in which Bulloch and members of his family were riding, flashing his headlights.  Thinking that Lehman was trying to alert them to a problem with their car, Bulloch's father– who was driving– pulled to the side of the road.  Lehman pulled over too but then "vigorously signaled with his arms for [the occupants of Bulloch's car] to stay in [their] vehicle."  (Bulloch Aff. at ¶ 8.) Confused as to Lehman's intent, Bulloch and his family members decided to continue driving toward their destination.

Given what Bulloch viewed as Lehman's "unexplained, escalating, aggressive actions" toward himself and his family, Lehman became concerned for his and his wife's safety.  (*Id.* ¶ 12.)  Because Bulloch intended to go to work, leaving his wife home alone, he called 911.  During the 911 call, Bulloch described to the operator Lehman

4

and his behavior in the last twenty-fours hours and provided that Lehman was "dancing" during the confrontation on Bulloch's driveway, appeared to be high on drugs, and had Johnson videotape the incident.

Lee County Sheriff Deputies Quintana and Richard responded to the 911 call. When they arrived at the scene, they spoke with Bulloch. The deputies then waited in Lehman's driveway for him to return. When Lehman returned, the deputies spoke to him for approximately forty minutes. Lehman told the deputies about the confrontation with Bulloch on the latter's driveway and asked the deputies if they wanted to view the videotape. The officers declined.

During their conversation with Lehman, the deputies became concerned about his mental health and they radioed for additional assistance. Deputy Prezpolewski responded and arrived on the scene. Deputy Prezpolewski first approached Bulloch, who remained on his property. Deputy Prezpolewski then crossed the street and approached Lehman.

While Deputy Prezpolewski was speaking with Lehman, Bulloch approached and informed the deputy that he was in fear based on Lehman's behavior that morning and the previous day. After speaking with Bulloch and Lehman and observing Lehman, Deputies Prezpolewski, Quintana, and Richard decided to take Lehman into custody pursuant to Florida's Baker Act for the purpose of submitting him to an involuntary mental examination.

Sometime after the deputies made this decision, Lehman approached his truck, which was parked on the driveway, and reached to open the door. As he did so, Deputy Prezpolewski placed handcuffs on him and told him that the officers were going to get

him some help.  Deputy Prezpolewski then removed Lehman's wallet from his person and flipped through it.  Inside the wallet, Deputy Prezpolewski found an identification for Lehman and Johnson and Lehman's concealed weapons permit.

Realizing that Johnson reportedly had been present during the altercation with Bulloch but that she had not been seen since the deputies arrived, Deputy Prezpolewski told Lehman that he wanted to speak with her.  Lehman responded that Johnson was not at home.  Deputy Prezpolewski did not believe Lehman, as there were two vehicles parked on the driveway and he knew Johnson had videotaped the earlier incident.  He therefore asked Lehman for access to the residence, but Lehman refused.

Deputy Prezpolewski then approached Plaintiffs' residence, knocked on the front door, and announced his presence.  When there was no response, the deputies walked to the side of the residence where they located an unlocked sliding glass door that led to a rental apartment.  When they discovered that there was no entry between the apartment and the residence, Deputy Prezpolewski took Lehman's keys and unlocked the front door.  At some point prior to this point, Deputy Reaves had arrived on the scene.

Deputy Prezpolewski, Quintana, and Reaves then entered the residence and walked around until they came upon a locked bedroom door.  Deputy Prezpolewski knocked loudly on the bedroom door and again announced his presence, but there was no response.  Lehman claims that Deputy Prezpolewski then threatened to forcefully enter the bedroom if Lehman did not give him the key to the door and so Lehman gave Deputy Prezpolewski the key.  When the officers entered the bedroom, they found Johnson sitting on a bed, unharmed.  The deputies then immediately left the residence.

Knowing that Lehman had a concealed weapons permit, Deputy Prezpolewski then asked Lehman if he had a weapon to secure.  Lehman indicated that his gun was inside his Ford Mustang, which was parked on the driveway.  Using one of the keys that he had obtained from Lehman when he unlocked the front door, Deputy Prezpolewski unlocked Lehman's car door and retrieved the weapon.  Deputy Prezpolewski then handed the weapon to Johnson, who by then had approached the front of the residence.

Deputy Quintana then completed a "Report of Law Enforcement Officer Initiating Involuntary Examination" ("RLEO") and Lehman was transported to the Ruth Cooper Center for a mental examination.  After approximately twenty-six hours, Lehman was released.  He and Johnson subsequently initiated this lawsuit.

III.    **Applicable Law and Analysis**

    A.    **Deputy Quintana's responses and answers to interrogatories**

In their summary judgment motion, Plaintiffs contend that Deputy Quintana's answers to their interrogatories and responses to their request for admissions were not "verified" because they were not signed by Deputy Quintana or his attorney.  Plaintiffs therefore contend that the matters therein should be deemed admitted.  Based on these "admissions," Plaintiffs argue that they are entitled to summary judgment.

Pursuant to Federal Rule of Civil Procedure 36, a request for admission is deemed admitted "unless, within 30 days after being served, the party to whom the request is directed serves on the requesting part a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P.

7

36(a)(3). Deputy Quintana did not sign the document containing his answers to Plaintiffs' interrogatories and responses to their requests for admission. His attorney, however, signed the document below a statement "advis[ing] that Interrogatories combined with Request for Admissions and Request to Produce numbered 1 through 90, have been answered and served on the 10th day of February, 2009" and below a certification that the document was mailed to Plaintiffs. (Doc. 75-3.)

In this Court's view, the signatures of Deputy Quintana's attorney satisfy Rule 36(a)(3). The rule does not require that the answer to a request for admission be sworn. See Fed. R. Civ. P. 36 advisory committee's notes. The rule also does not provide any specific requirements with respect to the party's or party's attorney's signature. Even if the signature of Deputy Quintana's attorney is insufficient, however, this Court does not believe that the matters in Plaintiffs' request for admissions should be deemed admitted as a result.

Pursuant to Rule 36, a party may withdraw or amend an admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). The first prong "emphasizes the importance of having the action resolved on the merits, . . . and is satisfied when upholding the admissions would practically eliminate any presentations of the merits of the case." *Perez v. Miami-Dade County*, 297 F.3d 1255, 1266 (11th Cir. 2002) (citations and internal quotation marks omitted). Deeming the matters admitted does not promote the interests of adjudicating this action on the merits. In addition, Plaintiffs suffer no prejudice if the matters are not deemed admitted because Deputy Quintana timely answered and

responded to Plaintiffs' discovery requests and therefore they were given sufficient notice of his answers and responses prior to filing their motion for summary judgment and responding to Defendants' motions.

**B.    Plaintiffs' claims under 42 U.S.C. § 1983 based on violations of Florida law**

In their summary judgment motion, Plaintiffs argue that the Deputy Defendants did not have a basis to take Lehman into custody pursuant to Florida's Baker Act, Fla. Stat. §§ 394.451-394.4789.  Plaintiffs therefore argue they are entitled to summary judgment with respect to Counts II-V of their Amended Complaint, in which they allege violations of their civil rights under 42 U.S.C. § 1983.  Defendants seek summary judgment to the extent Plaintiffs' § 1983 claims are premised on a violation of state law.

To the extent that Plaintiffs' § 1983 claims are based on violations of the Baker Act, they are precluded. The Baker Act is a state law.  To prevail on a claim under § 1983, a plaintiff must prove that a person acting under color of state law deprived the plaintiff of a right, privilege, or immunity *secured by the federal constitution or federal law*.  *See* 42 U.S.C. § 1983.  In other words, "[§] 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (citing *Paul v. Davis*, 424 U.S. 693, 698-99, 96 S. Ct. 1155, 1159 (1976)) "There is no federal right not to be arrested in violation of state law."  *Id.* (citations omitted); *see also Greer v. Hillsborough County Sheriff's Dep't*, 2005 WL 2416031, at *2 (M.D. Fla. Sept. 30, 2005) (holding that, "[t]o the extent the plaintiff attempts to assert a federal claim

pursuant to section 1983 for a violation of the Baker Act, the complaint fails to state a claim.")

Based on the foregoing, Plaintiff's § 1983 claims fail to the extent that they are based on alleged violations of the Baker Act. Plaintiffs' motion for summary judgment to this extent is denied and Defendants' motion to this extent is granted.

**C.      Plaintiffs' claims alleging violations of their Fourth Amendment Rights**

Plaintiffs allege violations of their Fourth Amendment rights pursuant to § 1983 in Counts II-V of their amended complaint.[1] Specifically, Plaintiffs allege that the Deputy Defendants unlawfully seized Lehman and searched their home and Lehman's vehicle. The Fourth Amendment articulates "the right of persons to be secure in their persons, houses, papers, and effects from unreasonable searches and seizures." U.S. Const. amend. IV.

**1.      Lehman's seizure**

Plaintiffs assert that the Deputy Defendants lacked probable cause to arrest Lehman and that they used excessive force in executing the arrest. The Deputy Defendants argue that they did not violate Lehman's Fourth Amendment rights because they had probable cause to take Lehman into custody and use handcuffs to restrain him under the Baker Act. The Deputy Defendants alternatively argue that they are entitled to qualified immunity.

---

[1]Plaintiffs also assert such a claim against Bulloch in Count VI. However, as indicated earlier, the Court dismissed this claim and defendant in a previous opinion and order.

Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities.[2]  *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696 (1999).  "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).  A government official is entitled to qualified immunity if (1) the facts shown fail to make out a violation of a constitutional right *or* (2) the right at issue was not "clearly established" at the time of the alleged misconduct.  *See Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)) "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)).  "'In the light of pre-existing law, the unlawfulness must be apparent.'" *Id.*  It is within a court's discretion to decide which prong of the qualified immunity analysis to address first.  *Pearson*, 129 S. Ct. at 818.

An arrest without a warrant or probable cause violates the Fourth Amendment. *See United States v. Carroll*, 267 U.S. 132, 156, 45 S. Ct. 280, 286 (1925).  "[P]robable cause to arrest exists 'when an arrest is objectively reasonable based on the totality of the circumstances.'" *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) (quoting

---

[2]There is no dispute that the Deputy Defendants were performing discretionary functions when they engaged in the conduct on which Plaintiffs' claims are based.

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242 (11th Cir. 2003) (additional

quotation marks and citations omitted)).  However, when qualified immunity is asserted,

the standard is not actual probable cause, but rather, "arguable probable cause".  *Id*. at

1089 (citing *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999).

"Arguable probable cause exists when 'an officer reasonably could have believed

that probable cause existed, in light of the information the officer possessed.'" *Id*.

(quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)).  An objective standard

applies to this analysis: "'[W]hether the officer's actions are objectively reasonable . . .

regardless of the officer's underlying intent or motivation.'" *Id*. (quoting *Vaughan v. Cox*,

264 F.3d 1027, 1036 (11th Cir. 2001)).

Under the Baker Act, if certain criteria are found, a law enforcement officer *is

required to* initiate an involuntary mental examination of an individual by taking the

individual into custody and delivering the individual to a facility for examination.  Fla.

Stat. 394.463(2)(a)(2).  The statute sets forth the following criteria that must be satisfied

before an involuntary mental examination is initiated:

> (1) Criteria– A person may be taken to a receiving facility for
> involuntary examination if there is reason to believe that the
> person has a mental illness and because of his or her mental
> illness:
>
> (a)  1. The person has refused voluntary examination after
> conscientious explanation and disclosure of the purpose of
> the examination; or
>
> 2. The person is unable to determine for himself or herself
> whether examination is necessary; and
>
> (b)  1. Without care or treatment, the person is likely to suffer
> from neglect or refuse to care for himself or herself; such
> neglect or refusal poses a real and present threat of

substantial harm to his or her well-being; and it is not
apparent that such harm may be avoided through the help of
willing family members or friends or the provision of other
services; or

2. There is substantial likelihood that without care or
treatment the person will cause serious bodily harm to
himself or herself or others in the near future, as evidenced
by recent behavior.

Fla. Stat. § 394.463. The statute requires an officer taking an individual into custody for

the purposes of an involuntary examination to complete a written report detailing the

circumstances under which the person was taken into custody– "Report of Law

Enforcement Officer Initiating Involuntary Examination" or "RLEO." Fla. Stat.

§ 394.463(2)(a)(2).

Plaintiffs argue that the criteria for taking Lehman into custody under the Baker

Act were not satisfied and they point in particular to the RLEO completed by Deputy

Quintana. (Doc. 75-5.) Plaintiffs note that Deputy Quintana failed to check the box

indicating that Lehman refused voluntary examination or the box indicating that Lehman

was unable to determine whether an examination was necessary in satisfaction of the

first criteria under § 394.463. Fla. Stat. § 394.463(a). Plaintiffs also argue that Deputy

Quintana failed to document circumstances indicating that Lehman posed a serious

threat to himself or others and they argue that no such circumstances existed.

On the RLEO, Deputy Quintana indicated that he had reason to believe that

Lehman has a mental illness and that "[t]here is substantial likelihood that without care

or treatment [Lehman] will cause serious bodily harm to . . . [him]self [and] others in the

near future, as evidenced by recent behavior." (Doc. 75-5.) He provides the following

circumstances to support this opinion: "Above listed individual exhibiting fears of

13

'everyone is out to get him.' Lehman appears to be irrational in thoughts [and] fear exists he will harm himself or another person." (*Id.*)

In their affidavits in support of their summary judgment motion, Deputies Quintana, Richard, and Prezpolewski set forth the facts that led them to reach the above conclusions and decide to "Baker Act" Lehman:

> • Mr. Bulloch informed the officers that Lehman had followed Bulloch's family in traffic the prior day.

> • Mr. Bulloch informed the officers that shortly before they arrived, Lehman approached Mr. Bulloch, on Mr. Bulloch's own driveway, cursing at Mr. Bulloch and accusing Mr. Bulloch, along with neighborhood children, of participating in a harassment scheme against Lehman.

> • Mr. Bulloch informed the officers that during the confrontation, Lehman used threatening gestures and threatened to post personal information about Mr. Bulloch on the Internet.

> • Mr. Bulloch also informed the officers that given Lehman's unexplained, escalating, aggressive actions toward him and his family he was concerned for his safety and the safety of his wife . . .

> •The ultimate decision to "Baker Act" Lehman was based on the officers' observations of Lehman's "erratic," "paranoid" behavior . . ., in addition to information provided by Bulloch.

(Quintana Aff. [Doc. 65] at ¶¶ 6-9, 11; Richard Aff. [Doc. 62] at ¶¶ 4, 6-10, 11; Prezpolewski Aff. [Doc. 64] at ¶¶ 4-5.) Additionally, in response to Plaintiffs' interrogatory asking the Deputy Defendants to "[s]tate the reason(s), if any, which caused you to believe that Lehman had a mental illness . . .," Deputies Prezpolewski, Quintana, and Richard answer that Lehman was acting "paranoid, confused, highly agitated, sweating, acting in a threatening manner, erratic, would not stand still." (Doc.

75-2 at No. 79; Doc. 75-3 at No. 79; Doc. 75-4 at No. 77.)  The videotape of Lehman's confrontation with Bulloch supports some of these observations. (Doc. 70, Ex. D.)  With respect to the first criteria required under § 394.463 (i.e. whether Lehman refused voluntary examination or was unable to determine himself whether examination was necessary), Plaintiffs acknowledge in response to the Deputy Defendants' motion that "Lehman stated 'I don't need your help[.] I was just dancing and videotaping and my woman was already helping with that."  (Pls.' Resp. [Doc. 82] at 5.)

Even if the Deputy Defendants did not include all of the above information in the RLEO and failed to properly complete the form, the Court finds that they present sufficient undisputed evidence to establish arguable probable cause for taking Lehman into custody pursuant to the Baker Act.[3]  Therefore, the Court concludes that the Deputy Defendants are entitled to qualified immunity with respect to Plaintiffs' claims that they unlawfully seized Lehman in violation of his Fourth Amendment rights.  As such, the Deputy Defendants are entitled to summary judgment with respect to those claims.

The Court also concludes that Deputy Prezpolewski is entitled to summary judgment with respect to Lehman's claim that the deputy used excessive force to restrain him.  As an initial matter, Plaintiffs cite no case and the Court has not identified a case holding that an officer may not handcuff an individual being taken into custody pursuant to the Baker Act.  The statute expressly permits a law enforcement officer executing a court's ex parte order initiating an involuntary examination of a person under the Act to "use such reasonable physical force as is necessary . . . to take

_____

[3]While the officers' failure to comply with the Baker Act's requirements may support a violation of state law, it does not support a violation of the Fourth Amendment.

custody of the person who is the subject of the ex parte order." Fla. Stat.

§ 394.463(2))d). While the statute is silent with respect to an officer's right to use force

when taking a person into custody under the Act without an ex part order (i.e. pursuant

to § 394.463(2)(a)(2)), the law is clear that "the right to make an arrest carries with it the

right to use some degree of physical coercion or threat thereof to effect it." *Graham v.

Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).

Excessive force claims are judged under the Fourth Amendment's "objective

reasonableness" standard. *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009)

(citing *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S. Ct. 596, 598 (1985)). "'Thus 'the

question is whether the officer's conduct is objectively reasonable in light of the facts

confronting the officer.'" *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir.

2002). Relying on the Supreme Court's decision in *Graham*, the Eleventh Circuit Court

of Appeals has articulated several considerations that a court should take into account

when deciding whether an officer's actions were reasonable. *Crenshaw*, 556 F.3d at

1290 (additional quotation marks and citation omitted). A court need not address these

considerations, however, where the officer applied only de minimis force. Under well-

established Eleventh Circuit precedent, "the application of de minimis force, without

more, will not support a claim for excessive force in violation of the Fourth Amendment."

*Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). The court has expressly held that

this principle is unaffected by the Supreme Court's decision in *Graham*. *Id.*

During his deposition in this case, Lehman testified that when he reached for the door of his truck, Deputy Prezpolewski "slapped handcuffs on [him].[4] (Lehman Dep. at 180.) Lehman does not claim that he suffered any injuries as a result of Deputy Prezpolewski's actions. Eleventh Circuit precedent establishes that this amount of force was de minimis and cannot support a claim for excessive force under the Fourth Amendment. *See e.g., Nolin*, 207 F.3d at 1256 (citing cases establishing that pushing an arrestee against a wall or vehicle, handcuffing, and/or applying handcuffs too tightly and refusing to loosen them for more than twenty minutes constitutes de minimis force that will not support an excessive force claim).

## 2. The search of Plaintiffs' home

Plaintiffs next assert that their Fourth Amendment rights were violated when Deputies Prezpolewski, Quintana, and Reaves entered their residence without a warrant and when Deputy Reaves allegedly looked through the contents of a sofa table inside the home. "Searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980). The deputies assert, however, that they entered Plaintiffs' home based on an exception to the warrant requirement arising when exigent circumstances are presented. Specifically, the Deputy Defendants maintain that Deputy Prezpolewski

_____

[4]In their Amended Complaint, Plaintiffs also allege that Deputy Prezpolewski pushed Lehman against his truck before handcuffing him and subsequently tightened the handcuffs. (*See* Am. Compl. ¶¶ 66-67, 217.) Even if the Court accepted these allegations as true, its conclusion with respect to Plaintiffs' excessive force claim would not be different. *See Nolin*, 207 F.3d at 1258 (concluding that grabbing arrestee from behind by the shoulder and wrist, throwing him against a van, kneeing him in the back, pushing his head into the side of the van, and then handcuffing him constituted de minimis force that did not support an excessive force claim).

made the decision to enter Plaintiffs' residence because he feared for Johnson's safety.[5]

"One of the most compelling events giving rise to exigent circumstances is the occurrence of an emergency situation." *United States v. Holloway*, 290 F.3d 1331, 1335 (11th Cir. 2002). "The most urgent emergency situation excusing police compliance with the warrant requirement is . . . the need to protect or preserve life." *Id.* (citing *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978)). According to Deputy Prezpolewski, when he learned that Johnson had not been heard from or seen during the more than forty minutes that Deputies Quintana and Richard were on the scene questioning Bulloch and Lehman, but that she had been involved in the confrontation with Bulloch, he became concerned for her safety and asked Lehman if he could speak with her. (Prezpolewski Aff. [Doc. 62] at ¶¶ 8-9; Pls.' Mot., Ex. 12.) Lehman told Deputy Prezpolewski that Johnson was not at home. (*Id.* at ¶ 9.) Deputy Prezpolewski believed that Lehman was lying because there were two vehicles on the driveway and he knew that Johnson had been present and videotaped the confrontation between Lehman and Bulloch. (*Id.*) Deputy Prezpolewski asked Lehman if he could enter the house and look for Johnson, but Lehman refused. (*Id.* at ¶¶ 9-10.)

Deputy Prezpolewski then knocked loudly on Plaintiffs' door, announced his presence, and requested that any occupant open the door. (*Id.* at ¶ 10.) When no one responded, Deputy Prezpolewski became more concerned that Johnson might be in

_____

[5]Plaintiffs contend that the Deputy Defendants claimed that they entered the home to conduct a "protective sweep" and Plaintiffs argue in their pleadings that such a sweep was not justified. As the Deputy Defendants are not asserting this exception to the warrant requirement in defense of Plaintiffs' unlawful search claim, the Court will not address Plaintiffs' arguments for why such a search would not be justified.

need of medical assistance and unable to answer the door. (*Id.*) Deputy Prezpolewski therefore took house keys from Lehman and entered the house with Deputy Quintana.

Once inside the residence, the deputies located a locked bedroom door. (Prezpolewski Aff. at ¶ 14.; Quintana Aff. [Doc. 65] at ¶ 22.) Deputy Prezpolewski knocked on the bedroom door, again identified himself as being with the Lee County Sheriff's Department, and requested entry. (Prezpolewski Aff. at ¶ 15; Quintana Aff. at ¶ 23.) When Deputy Prezpolewski told Lehman that he was going to enter the bedroom with or without his assistance, Lehman directed the deputy to a key for the door. (Prezpolewski Aff. at ¶ 16; Quintana Aff. at ¶ 24.) When the deputies entered the bedroom, they found Johnson awake and sitting on a bed. The Deputies then left the residence with Deputy Quintana escorting Lehman. On the way out, Lehman claims that he saw Deputy Reaves "looking in my sofa table." (Lehman Dep. at 189.)

Lehman confirmed this chain of events during his deposition in this case. (Lehman Dep. at 181-89.) Lehman also testified that he instructed Johnson not to answer the door if the police showed up after his confrontation with Bulloch. (*Id.* at 183-84.)

Plaintiffs argue that the evidence does not support the deputies' claim that they were concerned for Johnson's well-being. Plaintiffs note that the Deputy Defendants were responding to a non-emergency call. They also contend that there were no facts to suggest that Johnson was in danger or in need of immediate aid.

This Court concludes that the Deputy Defendants have presented evidence to support a finding that they had probable cause (or at least arguable probable cause) to believe that Johnson might be in danger. Deputy Prezpolewski believed that Johnson

was inside Plaintiffs' residence, but when he asked Lehman, Lehman denied that she was home and refused to let the officers speak with her. Deputy Prezpolewski knocked on the front and bedroom doors of the residence, announced his presence, and demanded that Johnson open the door. She, however, did not open the doors or otherwise respond so as to indicate that she was inside and unharmed. While such circumstances normally might not lead a reasonable officer to believe that a person is in danger, the Deputy Defendants had already observed Lehman's behavior for more than forty minutes. As they indicated on their answers to Plaintiffs' interrogatories, and the videotape of the confrontation between Lehman and Bulloch supports, Lehman was "acting in a threatening manner, [was] erratic, and would not stand still." (Doc. 75-2 at No. 79; Doc. 75-3 at No. 79; Doc. 75-4 at No. 77.) They also observed that Lehman was acting "paranoid" and was "highly agitated." (*Id.*) Notably, as soon as the Deputy Defendants located Johnson and determined that she was unharmed, they left the residence.

As the Eleventh Circuit has observed, "police officers must be given the authority and flexibility to act quickly, based on limited information, when human life is at stake" and "[t]he fact that no victims are found, or that the information ultimately proves to be false or inaccurate, does not render the police action any less lawful." *Holloway*, 290 F.3d at 1339-40 (citing *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963)). The Court therefore concludes that the Deputy Defendants are entitled to summary judgment with respect to Plaintiffs' claims that they violated the Fourth Amendment by entering Plaintiffs' residence.

Even if Deputy Reaves was lawfully inside Plaintiffs' residence based on the exigent circumstances exception, he did not have the right to search the residence beyond the scope justified by the exigency.[6]  *See United States v. Parr*, 716 F.2d 796, 813 (11th Cir. 1983) (citing *United States v. Brand*, 556 F.2d 1312, 1317 n.9 (5th Cir. 1977)).  The Deputy Defendants argue, however, that Deputy Reaves did not violate Plaintiffs' constitutional rights by looking at or "prowling around Lehman's stuff" on the sofa table.  As the Deputy Defendants provide, officers do not violate the Fourth Amendment when they view items in plain view after lawfully entering a residence.  *See Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301 (1990).  In response, Plaintiffs do not argue that Deputy Reaves did anything more than view items that were in plain view on their sofa table.  Accordingly, the Court concludes that Deputy Reaves is entitled to summary judgment with respect to Plaintiffs' claim that she unlawfully searched their home.

### 3.    The search of Lehman's vehicle

Plaintiffs contend that Deputy Prezpolewski searched Lehman's vehicle in violation of the Fourth Amendment.  Defendants contend that the search was justified by Deputy Prezpolewski's belief that he needed to secure Lehman's weapon.  Deputy Prezpolewski discovered that Lehman had a Concealed Weapons Permit after Lehman was taken into custody and he therefore asked Lehman pursuant to the requirements of the Baker Act whether he had any weapons that needed to be secured. (Prezpolewski

---

[6]Deputy Reaves in fact does not recall entering Plaintiffs' residence.  (Reaves Aff. [Doc. 63] at ¶ 4.)  Lehman, however, testified that he saw the deputy inside the home. (Lehman Dep. at 189.)  Therefore there is a genuine issue of material fact at least with respect to whether Deputy Reaves entered the home.

Aff. at ¶ 19; Pls.' Mot., Ex. 12 at 2); *see also* Fla. Stat. § 394.458(1)(a) (making it unlawful to bring any firearm or deadly weapon onto the grounds of a hospital providing mental services).  Lehman told Deputy Prezpolewski that his gun was inside his car, which was parked on the driveway.  (*Id.*)  Deputy Prezpolewski took the keys to Lehman's car, retrieved the weapon (which was in a pouch on the rear seat), and gave the weapon to Johnson.  (*Id.* at ¶ 21.)

A search without a warrant is "'per se unreasonable under the Fourth Amendment– subject only to a few specifically established and well-delineated exceptions.'"  *See Arizona v. Gant*, – U.S. –, 129 S. Ct. 1710, 1716 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507 (1967)).  None of the exceptions applies in the present case.[7]  Defendants assert that Deputy Prezpolewski entered Lehman's vehicle to remove Lehman's weapon based on a "public safety" concern.  Defendants, however, cite no authority and the Court found none recognizing such an exception to the "cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment . . .'" *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412 (1972) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)).

---

[7]There is a well-established exception for when a search is conducted incident to a lawful arrest; however, the search may only include "the arrestee's person and the area within his immediate control– construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969).  The Supreme Court has held that the search of a car in a driveway is not incident to an arrest inside the home.  *Coolidge v. New Hampshire*, 403 U.S. 443, 456-67 and n. 11, 91 S. Ct. 2022, 2032-33 and n. 11 (1971). Moreover, Lehman already was in handcuffs and had no access to his locked vehicle.

The Court therefore concludes that Plaintiffs are entitled to summary judgment with respect to their claim that Deputy Prezpolewski violated Lehman's Fourth Amendment rights by entering Lehman's vehicle.

**D.    Lehman's claim that Deputy Prezpolewski retaliated against him for exercising his First Amendment rights**

In Count VII of Plaintiffs' Amended Complaint, Lehman seeks to hold Deputy Prezpolewski liable under § 1983 for retaliating against him for exercising his First Amendment rights.  To demonstrate their First Amendment claim, Plaintiffs must show "first, that [Lehman's] speech or act was constitutionally protected; second, that [Deputy Prezpolewski's] retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Plaintiffs allege in their complaint that Lehman "was lawfully engaged in free speech, expressing his opposition to local harassment while dancing and videotaping, and was seized for said behavior, . . ."  (Am. Compl. at ¶ 146.)  Defendants move for summary judgment with respect to this count, arguing that Plaintiff's "speech" when he confronted Bulloch on the latter's property was not "protected activity."

Citing *Grigley v. City of Atlanta*, 136 F. 3d 752 (11th Cir. 1998), and *Belk v. Town of Minocqua*, 858 F.2d 1258 (7th Cir. 1988), the Deputy Defendants contend that Lehman's speech was not protected by the First Amendment because it did not "touch[] on a matter of 'public concern.'" (Defs.' Mot. at 18.)  However, this limited definition of "protected speech" only is applicable in cases where the speaker is a governmental employee.  *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731 (1968); *Connick*

*v. Myers*, 461 U.S. 138, 103 S. Ct. 1684 (1982).  When non-government actors speak, the category of speech protected by the First Amendment is far broader.  *See Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536 (2003) (describing the breadth of "speech" protected by the First Amendment and providing that the First Amendment permits restrictions upon the content of speech in only in "a few limited areas"); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 62 S. Ct. 766, 769 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem.  These include the lewd and obscene, the profane, the libelous, and the insulting or fighting words . . .").

Nevertheless, "[t]he First Amendment right to speak . . . is not an absolute right to engage in every form of speech whenever and wherever the speaker desires."  *City of Watseka v. Illinois Public Auction Council*, 796 F.2d 1547, 1561 (7th Cir. 1986) (citing *Schenck v. United States*, 249 U.S. 47, 52, 39 S. Ct. 247, 249 (1919) and *Greer v. Spock*, 424 U.S. 828, 836, 96 S. Ct. 1211, 1216 (1976)).  It is Plaintiffs' burden to show that Lehman's "speech" on Bulloch's driveway was protected under the First Amendment.  The Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only."  *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569, 92 S. Ct. 2219, 2229 (1972).  But even if Lehman's speech was protected by the First Amendment, the evidence demonstrates that Deputy Prezpolewski made the decision to take Lehman into custody, not because of the content of Lehman's speech, but because Lehman exhibited recent behavior suggesting to a reasonable officer that

he likely would cause serious harm to himself or others without care or treatment.  *See* Fla. Stat. § 394.463.

The Court therefore concludes that Deputy Prezpolewski is entitled to summary judgment with respect to Plaintiffs' claim that he engaged in retaliation in violatation of Lehman's First Amendment rights.

**D.    Plaintiffs' state law claims**

**1.    Lehman's malicious prosecution claim against Defendant Prezpolewski**

To prevail on a claim for malicious prosecution under Florida law, a plaintiff must demonstrate the following elements:

> "(1) [that] an original criminal or civil judicial proceeding against the present plaintiff was commenced and continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of the proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding."

*Cohen v. Corwin*, 980 So.2d 1153, 1155 (Fla. Dist. Ct. App. 2008) (quoting *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla 1994)).  For the reason that this Court dismissed Lehman's malicious prosecution claim against Bulloch in its May 4, 2009 opinion and order, it concludes that the claim also fails against Deputy Prezpolewski. No original criminal or civil proceeding was commenced or continued against Lehman and thus he cannot establish the first element of this claim:

> Unlike the situation where an involuntary examination is initiated by a court under Section 394.463(2)(a)(1) of the Baker Act, no civil or criminal proceedings are commenced where an examination is initiated by a law enforcement officer pursuant to Section 394.463(2)(a)(2) of the statute. *See Everett v. Florida Inst. of Tech.*, 503 So.2d 1382, 1383 (Fla. Dist. Ct. App. 1987). Instead, a law enforcement officer believing that a person meets the criteria for involuntary examination simply takes the person into custody, completes a written report detailing the circumstances under which the person was taken into custody, and delivers the person to the nearest receiving facility for examination. Fla. Stat. § 394.463(2)(a)(2).

(Doc. 83 at 4.) After Lehman was examined at the Ruth Cooper Center, he was released.

The Court therefore grants summary judgment to Deputy Prezpolewski with respect to Lehman's malicious prosecution claim.

### 2. Plaintiffs' negligence and/or reckless conduct claim against the Deputy Defendants

Plaintiffs allege that the Deputy Defendants' conduct constituted negligence and/or reckless conduct. Specifically, Plaintiffs allege that the Deputy Defendants owed them a duty of reasonable care and that they violated that duty by conducting a seizure of Lehman and search of their residence and Lehman's vehicle without a warrant, probable cause, or consent. (Am. Compl. at ¶ 211.) Plaintiffs' claim is barred in part by this Court's previous finding that the Deputy Defendants had probable cause to arrest Lehman and search Plaintiffs' residence. The claim is completely barred by Florida Statute section 769.28.

Section 769.28 provides that officers may not be liable in tort for actions taken in the scope of their employment unless the officers "acted in bad faith or with malicious

purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 769.28(a). The Deputy Defendants were acting within the scope of their employment and nothing in the record reveals that they acted in bad faith, with malicious purpose, or wanton and willful disregard of human rights, safety, or property. *Id.* As such, Defendants' motion for summary judgment as to Count IX is granted.

### 3. Lehman's assault and battery claim against Deputy Prezpolewski

Lehman asserts a state law assault and battery claim against Deputy Prezpolewski based on the latter's handcuffing of Lehman when he took him into custody. The same analysis for an excessive force claim under the Fourth Amendment applies to a battery claim for excessive force under Florida law: ". . . whether the amount of force was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So.2d 46, 47 (Fla. Ct. App. 1996) (citing *Dixon v. State*, 132 So.2d 684 (Fla. 1931)). Therefore, based on the Court's analysis with respect to Lehman's Fourth Amendment excessive force claim, it concludes that Deputy Prezpolewski is entitled to summary judgment with respect to Lehman's assault and battery claim.

### E. Plaintiffs' claims against Sheriff Scott

As indicated earlier, Plaintiffs seek to hold Sheriff Scott liable in his individual and official capacities based on his alleged failure to train and supervise the Deputy Defendants, resulting in violations of Plaintiffs' constitutional rights. Plaintiffs' claim against Sheriff Scott is precluded to the extent this Court already has found that the Deputy Defendants did not violate– or are entitled to qualified immunity with respect to

Plaintiffs' claims that they violated– their First and Fourth Amendment rights. Plaintiffs' claim otherwise is precluded because the Court concludes that they fail to present evidence to support their allegations against Sheriff Scott.

To prevail in a § 1983 claim against a state official sued in his or her individual capacity, a plaintiff must show that the official was personally involved in acts or omissions that resulted in the deprivation of the plaintiff's constitutional rights. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *see also Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). In this case, the record is devoid of evidence showing that Sheriff Scott was personally involved in any of the actions giving rise to Plaintiffs' complaint. Sheriff Scott was not present during the incident and there is no suggestion that he directed the actions of the Deputy Defendants.

A claim against a government official in his or her official capacity is tantamount to a suit against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099 (1985). A plaintiff claiming a § 1983 violation cannot rely upon a respondeat superior theory of liability to hold an entity liable for the acts of its employees; instead, the plaintiff must show that an official policy or custom of the entity gave rise to the alleged violation. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037-38 (1978). Plaintiffs fail to articulate a specific policy or custom of the Lee County Sheriff's Office that they claim gave rise to the alleged violations of their constitutional rights.

The Supreme Court has recognized that inadequate training may impose § 1983 liability on a municipality in "limited circumstances." *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S. Ct. 1197, 1204 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate

28

indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S. Ct. at 1204. The Eleventh Circuit has held that a plaintiff asserting a § 1983 failure-to-train claim must present "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th. Cir. 1998). The appellate court "repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." *Id.* at 1351.

Plaintiffs fail to present evidence to show that Sheriff Scott knew or had notice of a need to further train or supervise his deputies in a particular area and that he deliberately chose not to do so. Plaintiffs have pointed to no other instances of constitutional violations by Lee County Deputies which might give rise to Sheriff Scott's knowledge of a need for further training. The Court therefore grants summary judgment to Sheriff Scott with respect to Plaintiffs' claim against him in his individual and official capacities.

## IV.    Summary

In conclusion, the Court holds that the Deputy Defendants are entitled to summary judgment with respect to Plaintiffs' § 1983 claims alleging that the deputies violated the Fourth Amendment when they seized Lehman and searched Plaintiffs' residence (Count II in part and Counts III-V in their entirety) and that Deputy Prezpolewski retaliated against Lehman in violation of his First Amendment rights (Count VII). The Deputy Defendants also are entitled to summary judgment with respect to Plaintiffs' state law claims of malicious prosecution, negligence and/or

reckless conduct, and assault and battery (Counts VIII-X).  Sheriff Scott is entitled to summary judgment with respect to Plaintiffs' § 1983 claim against him in his individual and official capacities (Count I).  The Court concludes, however, that Plaintiffs are entitled to summary judgment with respect to their claim that Deputy Prezpolewski violated the Fourth Amendment when he entered Lehman's vehicle to secure Lehman's weapon (Count II in part).

Accordingly,

**IT IS ORDERED**, that Plaintiffs' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** in that it is granted only to the extent Plaintiffs claim in Count II that Deputy Prezpolewski unlawfully searched Lehman's vehicle;

**IT IS FURTHER ORDERED**, that Sheriff Scott's motion for summary judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that the Deputy Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, in that it is granted with respect to all of Plaintiffs' claims except their illegal search claim with respect to Lehman's vehicle which they allege against Deputy Prezpolewski in Count II.


DATE: July 1, 2009                           s/PATRICK J. DUGGAN
                                             UNITED STATES DISTRICT JUDGE

Copies to:

Kenneth Lehman and Sheila Johnson
27386 Dortch Avenue
Bonita Springs, FL  34135

Kim E. Howard, Esq.

Benjamin Brown, Esq.